UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GERALD LABOURDETTE                          CIVIL ACTION

VERSUS                                                   NO. 14-1594

SOCIAL SECURITY ADMINISTRATION          SECTION "B" (3)

**REPORT AND RECOMMENDATION**

        Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I.      BACKGROUND**

        Plaintiff filed a protective application for DIB on May 14, 2011, alleging a disability onset date of April 20, 2011. (Adm. Rec. at 239-40). The same day, he filed his application for SSI. (*Id.* at 246-53). Plaintiff alleges disability due to Crohn's Disease, arthritis, mental anxiety, and his HIV-positive status. (*Id.* at 313). Plaintiff, born on March 1, 1986, was 25 years old on the date on which he alleged disability and 27 years old at the time of the final administrative decision. (*Id.* at 308). Plaintiff has a high school education and spent two years at college. (*Id.* at 313). Plaintiff has

past work experience as a hair cutter and waiter. (*Id.* at 19, 314).

Defendant initially denied plaintiff's applications on August 2, 2011. (*Id.* at 58-85, 86-89). Plaintiff sought an administrative hearing, which defendant held on March 13, 2013. (*Id.* at 25-57). Plaintiff and a vocational expert ("VE"), Patricia Ehlinger, testified at the hearing.

On March 29, 2013, the administrative law judge ("ALJ") issued a decision in which he found that plaintiff had not been disabled through the date of the decision. (*Id.* at 12-20). In the decision, the ALJ concluded that plaintiff has the severe impairments of asymptomatic HIV-infection, Crohn's disease, Grave's Disease, anxiety, and depression. (*Id.* at 14). The ALJ held that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments under the regulations. (*Id.* at 15). The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b). (*Id.*). He concluded that plaintiff can sit four hours, stand two hours, and walk two hours each at one time. (*Id.*). He also determined that plaintiff needs to be able to change positions after the times indicated; that he can sit a total of six hours in an eight-hour workday; reach overhead occasionally and reach in all other directions continuously; that he can handle, finger, and feel continuously; and that he can occasionally climb stairs, ramps, ladders, and scaffolds. (*Id.*). The ALJ further concluded that plaintiff can frequently balance, stoop, kneel, crouch, and crawl; that he is unable to work at unprotected heights; that he can occasionally work around moving machinery parts and equipment; and that he can frequently operate a motor vehicle. (*Id.*). He also noted that plaintiff can work around humidity, dust, and other irritants; that he can frequently work in extreme cold and extreme heat, and that he can work in close proximity to co-workers as long as there are

no more than five to ten such people at one time and provided he is not required to work with co-workers to accomplish any particular task. (*Id.*). Lastly, the ALJ noted that plaintiff has difficulty maintaining attention and concentration such that he would not work at his optimum level of performance up to one-third of the workday, but at no time would work be precluded altogether. (*Id.*).

At step four of the analysis, the ALJ held that plaintiff can not perform his past relevant work as a hair cutter or waiter. (*Id.* at 19). And although the ALJ found that plaintiff was incapable of performing his past relevant work, he found that plaintiff is capable of performing other jobs that exist in the national economy. (*Id.*). With the use of VE testimony, and considering plaintiff's age, education, work experience, and RFC, the ALJ found that plaintiff can perform a significant number of light exertion jobs in the national economy, such as cashier and office helper. (*Id.* at 20). The ALJ thus denied plaintiff DIB. (*Id.*).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that he is not disabled. (*Id.* at 8). On June 23, 2014, the Appeals Council denied plaintiff's request. (*Id.* at 1-5). Plaintiff then timely filed this civil action.

**II.    STANDARD OF REVIEW**

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991).

If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

### III.    ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must

show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental

> ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV. ISSUES ON APPEAL

There are two issues on appeal:

(1) Whether substantial evidence supports the ALJ's finding that plaintiff did not meet Listing 5.08.

   (2)  Whether substantial evidence supports the Appeals Council's consideration, or lack thereof, of plaintiff's new additional medical records.

## V. ANALYSIS

### 1. Whether substantial evidence supports the ALJ's finding that plaintiff did not meet Listing 5.08.

Plaintiff argues that had the ALJ fully developed the record and had he secured all of plaintiff's Tulane Medical Center records, the ALJ might have concluded that plaintiff meets Section 5.08 of the Listing of Impairments. Section 5.08 provides that weight loss can support a finding of disability:

> Weight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.5 calculated on at least two evaluations at least 60 days apart within a consecutive 6 month period.

Plaintiff maintains that he has already established that he has a digestive disorder – Crohn's Disease – and the additional documents reveal numerous BMIs below 17.5 per cent over a 13-month period.

  The ALJ concluded that plaintiff's Crohn's disease does not meet the requirements of Listing 5.08 at any time during the relevant time period, and this Court finds that conclusion supported by substantial evidence. The record reveals that plaintiff sought treatment on February 18, 2011 for generalized malaise, complaining of a sore throat, chills, productive cough, and runny nose. (Adm. Rec. at 348). At that time, he acknowledged a past history of Crohn's disease, but Dr. Roy Ary noted that his last flare-up had been five years earlier. (*Id.*). A Dr. Hughes treated him on April 28, 2011, when he complained of a respiratory illness and diarrhea for one month with weight loss. (*Id.* at 363). He returned on May 3, 2011, still complaining of diarrhea, (*id.* at 377, 530), but by May 9, 2011, he acknowledged that he had only occasional abdominal pain and diarrhea. (*Id.* at 379, 528,

560). On June 6, 2011, he denied recent weight change but alleged alternating diarrhea and constipation. (*Id.* at 395, 558). After a colonoscopy on July 7, 2011 revealed ulcerative colitis, plaintiff was prescribed medication for his condition. (*Id.* at 382).

Plaintiff next sought treatment on January 9, 2012, at which time he stated that his diarrhea had resolved but that he had a decreased appetite with weight loss. (*Id.* at 523). At an office visit on January 23, 2012, plaintiff denied any diarrhea or constipation and attributed his weight loss over the previous three months to moving from Memphis to New Orleans. (*Id.* at 553-54). At that time, it was noted that a colonoscopy in December 2011 was "grossly completely normal." (*Id.* at 554). His examining physician opined that his weight loss could be due to his move or to stopping his use of Klonipin. (*Id.*). At a mental health visit on February 15, 2012, plaintiff stated that he had a poor appetite and blamed that along with his Crohn's disease for his weight loss. (*Id.* at 457). He returned on March 3, 2012, complaining of a sore throat and cough, and, after questioning, denied diarrhea (*Id.* at 393, 517, 552). At an appointment on March 5, 2012, he stated that he was "doing well" and once again denied diarrhea. (*Id.* at 512, 547). On April 18, 2012, he complained of a decreased appetite due to anxiety and depression. (*Id.* at 464).

Plaintiff returned to the doctor on May 2, 2012, at which time the doctor noted that his Crohn's disease was well-controlled. (*Id.* at 505, 543). During the visit, Plaintiff denied abdominal pain, diarrhea, or constipation. (*Id.* at 505, 543). He again denied diarrhea on May 7, 2012. (*Id.* at 499). At a further evaluation on November 9, 2012, plaintiff had only a little inflammation in his colon. (*Id.* at 474). Plaintiff stated that he had lost approximately 20 pounds in August and September 2012 secondary to Graves' disease that had been diagnosed in October 2012. (*Id.*).

However, subsequent to his diagnosis and placement on medication for his Graves' disease, plaintiff had gained back nine pounds, increasing from 110 to 119 pounds. (*Id.* at 474).

The Court's review of the medical records reveals that plaintiff suffered from diarrhea secondary to his Crohn's disease from March 2011 through December 2011, a period of nine months. (*Id.* at 332, 363, 379, 393, 395, 457, 464, 474, 500, 505, 512, 517-19, 523, 526, 528, 543, 547, 552, 554, 558, 560). As of January 2012 and continuing, he consistently told his doctors that he no longer had diarrhea, constipation, or abdominal pain. (*Id.* at 332, 363, 379, 393, 395, 457, 464, 474, 500, 505, 512, 517-19, 523, 526, 528, 543, 547, 552, 554, 558, 560).

At the oral hearing before the ALJ on March 31, 2013, plaintiff testified that his HIV caused two to three bouts of diarrhea per day, but he admitted that he was unable to determine if the diarrhea was due to his HIV status or to his Crohn's disease. (*Id.* at 30). Plaintiff then stated that his weight loss was secondary to his Graves' disease. (*Id.* at 31). Moreover, plaintiff testified that he was prescribed Levathoroxin to treat his Graves' disease and that it, too, caused diarrhea. (*Id.* at 34).

The medical records before the Court and plaintiff's own testimony at the oral hearing reveal that, although he was diagnosed with Crohn's disease and underwent treatment for it, substantial evidence supports the ALJ's conclusion that Crohn's disease was not in and of itself the cause of plaintiff's weight loss. The records demonstrate that he experienced a decreased appetite due to depression and anxiety. (*Id.* at 464). At one time, plaintiff attributed his weight loss to moving back to New Orleans from Memphis. (*Id.* at 518, 553). His doctor thought it might be due to his stopping Klonipin. (*Id.* at 518, 553). Plaintiff's own testimony shows that it is unclear if his diarrhea was

caused by his Crohn's disease, his HIV, or Levathoroxin. (*Id.* at 30, 34). Moreover, he testified that his weight loss was secondary to his Graves' disease. (*Id.* at 31). Additionally, there is no evidence in the record that any physician opined that plaintiff's weight loss was due to his Crohn's disease. (*Id.* at 332, 363, 379, 393, 395, 457, 464, 474, 500, 505, 512, 517-19, 523, 526, 528, 543, 547, 552, 554, 558, 560). Thus, the Court finds that plaintiff has not satisfied his burden to assert that he meets Listing 5.08 when, by his own admission, his weight was caused by factors other than a digestive disorder. Accordingly, the Court finds that substantial evidence supports the Secretary's finding here.

>   **2.     Whether substantial evidence supports the Appeals Council's consideration, or lack thereof, of plaintiff's new additional medical records.**

Citing *Epps v. Harris*, 624 F.2d 1267 (5th Cir. 1980), and *Culver v. Astrue*, 924 F. Supp. 2d 1295 (N.D. Ala. 2013), plaintiff contends that the Appeals Council ("AC") failed to adequately consider the new evidence that he submitted to it when he appealed the ALJ's denial of SSI and DIB. Generally, a claimant may present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). The AC has the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). However, the AC must consider evidence that is (1) new, (2) material, and (3) chronologically relevant. *Ingram*, 496 F.3d at 1261 (citing 20 C.F.R. § 404.970(b)). The new evidence is material if "it is relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (citations omitted). It is chronologically relevant if "it relates to the period on or before the date of

the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). If these conditions are satisfied, the AC must then review the case to see whether the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Id.*

When a claimant properly presents new evidence, and the AC denies review, the AC must show in its written denial that it has adequately evaluated the new evidence. *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980). If the AC merely "perfunctorily adhere[s]" to the ALJ's decision, the Commissioner's findings are, by definition, unsupported by substantial evidence. *Id.* ("This failure alone makes us unable to hold that the Secretary's findings are supported by substantial evidence. . . ."). In such cases, the Court must remand the decision to the Commissioner "for a determination of [the claimant's] disability eligibility reached on the total record." *Id.* (citation omitted); *accord Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984) (holding that AC perfunctorily adhered to the ALJ's decision and that it had previously "been unable to hold the Secretary's findings were supported by substantial evidence under circumstances such as these") (citing *Epps*, 624 F.2d at 1273); *Ingram*, 496 F.3d at 1263 (quoting *Bowen* to the same effect).

In *Culver*, the court remanded the lawsuit, finding that the AC had perfunctorily adhered to the ALJ's decision after the admittance of new evidence when it stated,

> [i]n looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We also considered the contentions raised in your representative's brief dated March 21, 2011. We found this information does not provide a basis for changing the Administrative Law Judge's decision.

924 F. Supp. 2d at 1302. Here, the AC stated similarly: "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of

11

Appeals Council. . . . We found that this information does not provide a basis for changing the Administrative Judge's decision." (Adm. Rec. at 1-2). If this were the end of the analysis, this Court would certainly remand.

However, and as noted above, it is well-established law that for new evidence to be material, there must a reasonable possibility that the outcome would have been different had the evidence been before the Commissioner. *Latham v. Shalala*, 36 F.3d 482 (5th Cir. 1994). Moreover, a district court may remand a Social Security case to the ALJ only "upon a showing . . . that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989) (citing 42 U.S.C. § 405(g)).

Here, plaintiff has not attempted to establish good cause for his failure to incorporate this new evidence prior to the ALJ's decision. *See id.* at 1471-1472. It is the settled law of this circuit that new evidence is not the requisite good cause for such a remand unless a proper explanation is given of why it was not submitted earlier. *See Geyen v. Sec'y of Health & Human Servs.*, 850 F.2d 863, 864 (5th Cir. 1988) (citing *Chaney v. Schweiker*, 659 F.2d 676 (5th Cir. 1981)). The mere fact that a medical report is of recent origin is not sufficient to show good cause if plaintiff could have timely obtained such a record and submitted it to the Commissioner. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). Here, plaintiff has provided no explanation for his failure to submit the medical records to the ALJ. Moreover, at the hearing on August 9, 2012, the ALJ tasked plaintiff's administrative attorney with procuring these very records that he submitted to the AC. (Adm. Rec. at 44-45). Despite this task, plaintiff's administrative counsel failed to timely procure the records and submit them to the ALJ. Accordingly, plaintiff has not shown good cause for failing to timely

obtain and submit the evidence to the Commissioner.

Moreover, the Court has reviewed the records and finds that they would not have changed the decision of the ALJ. In his brief, plaintiff cites only to his weight on various dates and the requirements of Listing 5.08 to support his argument that the evidence might have changed the ALJ's decision. However, plaintiff's citations to the transcript support only an argument that his weight and Body Mass Index (BMI) meet the relevant criteria. Plaintiff has failed to demonstrate that he met the other criteria of Listing 5.08; namely, that his weight loss was "due to any digestive disorder." And, as discussed at length above, the record clearly reveals that plaintiff's other, non-digestive disorders were the cause of his weight loss.

## VI. CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 20th day of July, 2015.

_____
**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**